IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN  DIVISION

DARIS EDWARDS,                             )
                                           )
          Plaintiff,                       )
                                           )
     v.                                    )     CIVIL ACTION NO. 2:05-CV-00010-B
                                           )     [WO]
JO ANNE B. BARNHART,                       )
COMMISSIONER OF SOCIAL SECURITY,  )
                                           )
          Defendant.                       )

## MEMORANDUM OPINION AND ORDER

Betty Patterson ("Patterson") applied  for supplemental security income under Title XVI, 42 U.S.C. §§ 1381 *et seq.*, on behalf of her minor grandson, Daris Edwards ("Edwards"), who is now 21 years old.  Following an administrative denial of his application, Edwards received a requested hearing before an administrative law judge ("ALJ"), who rendered an unfavorable decision.  Because the Appeals Council rejected  review, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). This judicial review proceeds pursuant to 42 U.S.C. § 405(g) and 28 U.S.C. § 636 (c).  After careful scrutiny of the record and briefs,  the court concludes that the Commissioner's decision should be affirmed.

## I.  STANDARD OF REVIEW

Judicial review of the Commissioner's decision to deny benefits is limited.   The court cannot conduct a *de novo* review or substitute its own judgment for that of the Commissioner. *Walden v. Schweiker*, 672 F.2d 835 (11th Cir. 1982). The Commissioner's decision must be considered conclusive "if it is supported by substantial evidence and the correct legal standards were applied."  *Kelley v. Apfel*, 185 F. 3d 1211, 1213 (11th Cir. 1999), *citing Graham v. Apfel*, 129 F. 3d 1420, 1422 (11th Cir.

1997).

Substantial evidence is less than a preponderance; instead, it is considered such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Crawford v. Commissioner of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004); *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998). Because substantial evidence is "more than a scintilla," *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987), it "must do more than merely create a suspicion of the existence of the fact to be established." *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988). The court must examine the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

## II. ADMINISTRATIVE FINDINGS

Age 16 at the time of the March 1, 2001 hearing, Edwards was in the ninth grade and enrolled in learning- disabled courses. Edwards alleged disability since August 1,1999, due to "mental retardation, special education," and he has not engaged in substantial gainful work. Edwards' grandmother testified during the hearing and her allegations were deemed "not fully credible". Although the ALJ found two severe impairments– *oppositional defiant disorder* and *borderline intellectual functioning* – he concluded that the child suffered no impairment or combination of impairments that meets or medically or functionally equals in severity one set forth in the Listing of Impairments. Thus, the ALJ found that the impairments did not result in "marked and severe" functional limitations, and accordingly, grounded his non-disability determination.[1]

---

[1]R. 17-18.

## III.  ISSUES

Contrary to explicit instructions, Edwards identifies only the general issue for judicial review in every social security appeal – whether the ALJ's decision is supported by substantial evidence and the application of correct legal standards.  **Plaintiff's counsel is advised that hereafter similar non-compliance with this court's order will result in rejection of the brief.**

It appears that Edwards challenges the ALJ's analysis at step three of the three-step sequential evaluation process for childhood disability cases.[2]  He claims error in the ALJ's determination that his impairments do not functionally equal in severity one set forth in the Listing of Impairments. Edwards also contends that the ALJ failed to complete a psychiatric review technique form.  Because

---

[2]The three-step sequential evaluation process  for childhood disability cases is set forth in 20 C.F.R. §§ 404.1382c and 416.924 and summarized in *Shinn v. Commissioner of Social Security*, 391 F. 3d 1276, 1278-79 (11th Cir. 2004):

> The process begins with the ALJ determining whether the child is 'doing substantial gainful activity' in which case she is considered 'not disabled' and is ineligible for benefits.  20 C.F.R. §416.924(a),(b). The next step is for the ALJ to consider the child's 'physical and mental impairments' to determine if she has an 'impairment or combination of impairments that is severe'.  *Id.* §§416.924(a)(c)...For an applicant with a severe impairment, the ALJ next addresses whether the impairment 'causes marked and severe functional limitations' for the child.  20 C.F.R. §§416.924(b), 416.924(d). Limitations arising from pain count in this determination.  *Id.* §416.924(a)...A child's impairment is recognized as causing 'marked and severe functional limitations' if those limitations 'meet[], medically equal[], or functionally equal[] the Listings.' Id. §416.911(b)(1); see also §§416.902, 416.924(a)...Assuming that the limitations stemming from a child's severe impairment meet, medically equal, or functionally equal the limitations specified in the Listings, the ALJ concludes by ensuring that the impairment 'meets the duration requirement' specified in the federal regulations.  Id. §416.924(a).  This 'duration requirement' is that the impairment must 'be expected to cause death or...has lasted or can be expected to last for a continuous period of not less than 12 months.' 20 C.F.R. §416.906; see also id. §416.909.

3

an ALJ is only required to apply the technique in his written decision for adult disability cases or Part A childhood disability cases, the court declines any discussion on this claimed error.[3]  Thus, the discussion is limited to whether the ALJ's functional equivalency assessment is supported by substantial evidence and proper application of the relevant law.

## IV.  DISCUSSION

Challenged on this judicial review is the ALJ's functional equivalency assessment that Edwards does not have marked or extreme limitations in one or more of the six domains of functioning.  For three of these domains – acquiring and using information, attending and completing tasks, and interacting and relating with others – the ALJ found that Edwards had "less than marked" limitations.  The ALJ found no limitations for Edwards in the remaining three domains.

The parties do not dispute the applicable law.  In order to functionally equal the Listings, a severe impairment or a combination of impairments must result in "marked" limitations in two of the following domains of functioning or an "extreme" limitation in one of the following domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. §416.926a(a); 20 C.F.R. §416.926a(b)(1).  A "marked" limitation

---

[3]See 20 C.F.R. §416.920a(a)("[W]hen we evaluate the severity of mental impairments for adults (persons age 18 and over) and in persons under age 18 when Part A of the Listing of Impairments is used, we must follow a special technique at each level in the administrative review process."); 65 Fed. Reg. 50746 (Aug. 21, 2000); *cf., Moore v. Barnhart*, 405 F. 3d 1208, 1214 (11th Cir. 2005)(in adult disability case where claimant has presented a colorable claim of mental impairment, the social security regulations require the ALJ to complete a PRTF, append it to the decision, and incorporate its mode of analysis into his findings and conclusions).

occurs when the impairment interferes seriously with the ability to independently initiate, sustain, or complete activities while an "extreme" limitation occurs when the impairment(s) interferes very seriously with the ability to independently initiate, sustain, or complete activities.  20 C.F.R. §416.926a(e).[4]

Edwards finds the ALJ's conclusion that he did not functionally equal the Listings "disconcerting" and "hard to reconcile" with findings reflected in: (a) an October 1997 school evaluation conducted by Karen T. Berry, a psychometrist; (b) a psychological evaluation conducted by Dr. J. Walter Jacobs in January 2000, at the request of the State Agency; (c) a March 2000 psychological evaluation completed by Dr. Fred George, at the request of the State Agency; (d) hearing testimony by his grandmother;  (e) a February 28, 2001 letter from the Principal of Pike County High School, Terry Casey; and (f) an Individualized Education Program ("IEP") form completed during his tenth grade year of high school.  The Commissioner responds that "the ALJ properly developed and considered the record" and his findings are supported by substantial evidence.[5]  The court agrees.

With respect to the domain of acquiring and using information and the domain of attending and completing tasks, it appears that Edwards relies on the October 1997 testing administered by a psychometrist who opined that the child's "abilities to sustain attention, concentrate, and exert mental control are a weakness relative to his nonverbal reasoning abilities."  However, the examiner

_____

[4] A "marked" limitation also means a limitation that is "more than moderate" but "less than extreme."  An "extreme" limitation also means a limitation that is "more than marked".  20 C.F.R. §416.926a(e).

[5] Memorandum in Support of the Commissioner's Decision ("*Def.'s Br.*") at 7-8 (Doc. 12, filed June 24, 2005).

concluded that Edwards' general cognitive ability, based on IQ testing, is "low average" and his verbal and performance ability were also "low average".[6]  To the extent that Edwards also relies on testing conducted and the diagnosis rendered by the two psychological consultants, neither dictates a finding of a marked or extreme limitation in these two domains.

Following a psychological evaluation on January 20, 2000, Dr. Jacobs suspected Edwards of malingering and thus did not deem his IQ scores indicative of his current level of functioning."[7]  Dr. George also considered Edwards' testing results in March 2000  an underestimate of his intellectual ability.[8]  After reviewing the 1997 psychometric testing, school records, Dr. George's March 2000 psychological testing, along with  his own testing completed a few months prior, Dr. Jacobs continued to find the scores "well below" Edwards' real capabilities and suspected that he did not give optimum effort during testing.   Dr. Jacobs found it  " abundantly clear...that ... assessment is confounded by the family investment in obtaining disability for Daris."[9]  Dr. Clemmie Palmer, an expert psychiatrist, testified concerning  the invalid IQ scores obtained by Dr. Jacobs and his opinion that  the October 1997 testing provided  a better indication of Edwards' functioning.[10]

Edwards also points to his math, reading and spelling levels reflected on his IEP form completed during his tenth grade year of high school.  While this evidence  suggests some limitations in the two domains in controversy,  it does not dictate a finding of a marked or extreme limitation.

---

[6]R. 118.

[7]R. 124-126.

[8]R. 127-130.

[9]R. 137-141.

[10]R. 37-38.

Moreover, other evidence  supports the ALJ's finding of a less than marked limitation in these two domains.  His teacher described Edwards as an "average student" and reported that compared with other students in the classroom, Edwards' cognitive functioning was "above average".  The teacher assessed Edwards' ability to understand and follow instructions as "very good".  While "sometimes [Edwards] has to be redirected to complete [a] task", the teacher explained that he is "average".[11] Dr. Jacobs concluded that Edwards had no limitations in his ability to (a) understand, remember and carry out simple, one and two-step instructions; (b) understand, remember and carry out detailed or complex instructions; and (c) maintain attention, concentration or pace for periods of at least two hours.[12]

Contrary to Edwards' contention, the principal's letter and the psychological examiners' findings do not  demonstrate any error in the ALJ's refusal to accredit his grandmother's allegations of his violent and disruptive behavior and impaired social functioning.[13]  While the principal expressed the school's concern about Edwards and its desire to refer him to a school psychiatrist, there is no expressed  opinion about the child's  limitations in this domain. Both Drs. Jacobs and George reported the grandmother's assessment of Edwards' behavior and documented his behavior during testing, but neither attributed to him a marked or extreme limitation in the domain of interacting and relating with others.[14]

---

[11]R. 91.

[12]R. 143.

[13]*Pl.'s Br*. at 9.

[14]Edwards "presented" to Dr. Jacobs on January 20, 2000,  "as a tall thin uncommunicative black male. . . unresponsive to the examiner's questions and uncooperative during testing." (R. 125).
(continued...)

Edwards' grandmother testified that he "talks very violent" with her and gets angry and wants to fight with his aunt; she reported his scheduled appointment "to talk to juvenile" because of a picture he drew that is suspected to be "gang-related".[15]  Her testimony that Edwards may demonstrate *some* limitations in areas encompassed by this domain does not warrant a finding that he has a *marked* limitation in interacting and relating with others.   The ALJ's finding is supported by Edwards' teacher, who reported no behavioral problems, no change in behavior and average social skills[16] and by Dr. Jacobs' opinion that Edwards had no limitations in social functioning.[17]

With respect to each of the three domains in dispute, Edwards merely attempts to weigh the evidence and draw his own conclusions about the opinions expressed by the various psychological examiners and school personnel and the hearing testimony.  While Edwards may disagree with the manner in which the ALJ took account of the evidence, the court cannot reweigh the evidence. *Sewell v. Bowen*, 792 F. 2d 1065, 1067 (11th Cir. 1986).  Nor can the court decide the facts anew or substitute its judgment for that of the ALJ.  *See Phillips v. Barnhart*, 357 F. 3d 1232, 1240 n. 8 (11th

---

[14](...continued)
In his psychological evaluation in March 2000, Dr. Fred George noted inconsistencies in the grandmother's reports of the child's behavioral problems and the reports from his ninth grade teacher. Edwards' behavior during the testing by Dr. George suggested "highly significant impairments in...adaptive and social behavior" but he declined to make a prognosis pending an accurate diagnostic assessment. (R. 129).  On October 26, 2000, Dr. Jacobs noted a report from Edwards' aunt that he is "about average in his ability to get along with siblings and other children [and] somewhat below average in getting along with his guardian." Though she described symptoms "associated with an attention deficit hyperactivity disorder", Dr. Jacobs saw inconsistencies with reports by the teacher and grandmother, and he observed in Edwards "an undercurrent of hostility . . . not nearly so apparent as in the earlier evaluation." (R. 138-140).

[15]R. 25, 31.

[16]R. 92.

[17]R. 143 [October 31, 2000 Medical Source Opinion Form (Mental)].

8

Cir. 2004).  Although this court may have reached a contrary result as the finder of fact, it must

affirm the decision if it is supported by substantial evidence.  *Edwards v. Sullivan*, 937 F. 2d 580, 584

n. 3 (11th Cir. 1991).  Consequently, because substantial evidence supports the ALJ's functional

equivalency assessment, remand is not warranted.


## V.   CONCLUSION

For the reasons explained in this *Memorandum Opinion*, it is hereby **ORDERED** that the

decision of the  Commissioner is  **AFFIRMED**.       A separate judgment will be entered.

Done this 24th  day of March, 2006.


/s/ Delores R. Boyd

DELORES R. BOYD
UNITED STATES MAGISTRATE JUDGE